UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY NELSON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:07cv1158 TCM |
| | ) |
| JOHNATHON ROSENBOOM and | ) |
| MARY BETH ROWE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs,[1] four civil detainees at the Missouri Sexual Offender Treatment Center ("MSOTC"), engaged in a group protest over a doctor's order to forcibly inject one of the Plaintiffs with an anti-psychotic medication. The protest turned into a physical altercation between MSOTC staff and Plaintiffs. Police officers were called to the scene, and Plaintiffs were subdued with tasers and arrested. Plaintiffs filed suit under 42 U.S.C. § 1983 alleging that MSOTC staff and law enforcement officers[2] used excessive force in subduing them and effecting their arrest. Plaintiffs' claims against all but the two MSOTC defendants have been

---

[1]Plaintiffs are Timothy Nelson, Troy Lynn Spencer, Timmy L. Sumpter, and Michael Goddard.

[2]The law enforcement officers included Farmington police officers Jesse Boyer, Jason Stacy, Eric Spiker, and Pam Rion; St. Francois County Sheriff officers Lynn Gerstenschlager, Jason Rayem, Adam Wells, and Mark Wampler; and Missouri Highway Patrol officers Warren Robinson, Shannon Sitton, and J. Wheatley. Summary judgment was entered on February 19, 2009, in favor of the Farmington and St. Francois County officers. Plaintiffs voluntary dismissed their claims against the Highway Patrol officers.

dismissed.[3] The MSOTC defendants, Johnathon Rosenboom and Mary Beth Rowe, have moved for summary judgment on the basis that they were not directly involved in the physical altercations and that they are entitled to qualified immunity. For the reasons set forth below, the Court[4] agrees.

**Background**

As noted above, at all times relevant to the complaint, Plaintiffs were civil detainees at MSOTC. Defendant Mary Beth Rowe is a registered nurse and nursing supervisor at MSOTC. Defendant Jonathan Rosenboom is currently the clinical director at MSOTC and was the Director of Psychology at MSOTC in September 2006.

On July 11, 2006, Dr. Jay Englehart, a psychiatrist at MSOTC, prescribed involuntary injections of Risperdal, an anti-psychotic medication, for plaintiff Troy Spencer ("Spencer"). Englehart informed Spencer in a memorandum that Risperdal had not yet led to the cessation of any of Spencer's symptoms; he further informed Spencer that Risperdal had a number of potentially harmful side effects, such as diabetes and liver problems. Also in his memorandum, Englehart advised Spencer to "consult the facility policy" if Spencer had any questions about the procedures for involuntary medication. Spencer had previously refused to take Risperdal because of the possible side effects and because he preferred to receive religious treatment.

---

[3]See note 2, supra.

[4]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

On September 18, 2006, Spencer was scheduled to receive an injection of Risperdal. Spencer decided to resist the forced medication, and he informed MSOTC staff of his decision.

In declarations submitted with their response to the pending motion, Plaintiffs state that Spencer wanted to see the forced medication policy referenced in Dr. Englehart's letter before he received the injection and that he only refused to take the injection because he wasn't shown the policy. This testimony contradicts Spencer's deposition testimony, in which he testified that he would not take the injection because he considered it to be a hazardous treatment and because he preferred to be treated with religion only. (Defs.' Ex. D at 12-15.)[5] Nelson testified at his deposition that Spencer's objection to taking the Risperdal was religious: "Well, his objection was . . . he would rather be treated with religion." (Defs.' Ex. A at 13.) And, Sumpter testified that he "[hadn't] really talked to [Spencer]" about Spencer's reason for refusing the shot until the evening of the incident. (Defs.' Ex. C at 20.)

Plaintiffs Nelson, Sumpter, and Goddard supported Spencer's decision and planned to help Spencer physically resist the injection. They let MSOTC staff know that "there would be no forced medicating without a scrap."

---

[5]Defendants' Exhibits A-D are submitted in two parts. First, Defendants submitted portions of these exhibits with their motion for summary judgment. Second, Defendants supplemented these exhibits with their reply brief.

That evening, Rowe went to the day room to speak with Spencer about his refusal to comply with the forced medication order. The other Plaintiffs and several other residents were in the day room at that time. When Spencer continued to refuse the order, Rowe summoned several security aides to the day room. She ordered the other residents to leave the area and confine themselves to their rooms. Plaintiffs and at least two other residents refused to leave the day room.

Goddard, Nelson, and Sumpter state in their declarations that Rowe threatened to forcibly medicate them if they did not leave the day room and mind their own business. However, Nelson testified at his deposition that he did not recall Rowe's words from the conversation. (Defs.' Ex. A at 34.) And neither Goddard nor Spencer mentioned such a statement in their deposition testimony. (Defs.' Ex. B at 17-19; Ex. C at 14-15.)

After Plaintiffs and the other two residents refused to leave the room, MSOTC security aides entered.

Each Plaintiff states in his declaration that the MSOTC security aides physically attacked Spencer without provocation. This contradicts each of the Plaintiffs' deposition testimony, in which they stated that Spencer punched security aide Scott Pritchett after Pritchett reached out his arm for Spencer. (Defs.' Ex. A at 38, Ex. B at 19, Ex. C at 17, Ex. D at 42.) Spencer specifically testified, "I hit Pritchard [sic] with the heel of my hand right here in his chin as he was approaching me . . ." (Defs.' Ex. D at 42.)

After Spencer struck Pritchett, Pritchett placed Spencer into a choke hold and began choking him. Seeing this, Goddard hit Pritchett in the side of the head, causing Pritchett to

-4-

momentarily let go of Spencer. Pritchett grabbed Spencer again, and Nelson then choked Pritchett until he finally released Spencer. Two or three security aides had Goddard "hemmed in the corner." After he pulled Pritchett off of Spencer, Nelson pulled the security aides off of Goddard. At this point, the security aides left the room. Spencer and Nelson requested that MSOTC staff call the police.

Rowe called the police after conferring with Rosenboom. Neither Rowe nor Rosenboom physically participated in the altercation. Neither Rowe nor Rosenboom gave the security aides any instructions as to how or to what degree they should have used physical force in subduing plaintiffs. Rosenboom was not in the day room when the altercation occurred.

Police officers from the Farmington Police Department, the St. Francois County Sheriff's Department, and the Missouri State Highway Patrol were called to the scene.[6] Their dispatcher told them that there was a riot in progress.

Officers Boyer and Stacy spoke with MSOTC security staff regarding carrying their weapons into the facility. After discussing the matter, the officers received permission to carry their weapons. MSOTC staff then escorted the officers to the day room. Several MSOTC staff members told the officers that one of the Plaintiffs was refusing medication, that the other Plaintiffs had refused orders to return to their rooms, that the Plaintiffs had assaulted staff, and that the Plaintiffs would "fight the police."

---

[6]See note 2, supra.

Upon arriving at the day room, the officers subdued Plaintiffs with tasers and arrested them.[7] After Plaintiffs were subdued, an MSOTC nurse injected Spencer with Risperdal. Plaintiffs were then transported to the St. Francois County Jail (the "Jail").

Plaintiffs were housed at the Jail for six months or more as criminal charges were pending against them arising out of the altercation with MSOTC staff. While at the Jail, Spencer requested and obtained a form to file charges against the MSOTC staff that had been involved in the incident. Nelson requested voluntary statement forms from Jail staff, but was initially told to get the forms from his attorney. His attorney obtained the forms, and he filled them out. Sumpter told his attorney that he had asked for forms but that his request had been denied. Goddard was able to file motions in court while he was at the Jail.

The prosecutor eventually dropped the charges against Plaintiffs. Plaintiffs wanted to go to court to prove their innocence and believe that the prosecutor's decision denied them their right of access to the courts.

No Plaintiff has claimed any lasting injuries as a result of the September 18, 2006, incident.

## Discussion

The standard of review for a summary judgment motion was set forth in the Court's earlier memorandum and order and will not be repeated here. The Court notes, however, that "in order to defeat a motion for summary judgment, the non-movant cannot simply create a

---

[7]This incident is described in greater detail in the Court's memorandum and order dated February 19, 2009.

factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998).

With their response brief, Plaintiffs each submitted "declarations," which they rely on for evidentiary support for their allegations. These declarations contradict substantial and significant portions of their previous deposition testimony.

"It is well-settled that '[p]arties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment.'" **Bass v. City of Sioux Falls**, 232 F.3d 615, 618 (8th Cir. 1999) (quoting American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997)) (alteration in original). "Consequently, a party should not be allowed to create issues of credibility by contradicting his own earlier testimony." **Id.** "Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment." **Id.**; accord **Mountain Pure, LLC v. Bank of America, N.A.**, 481 F.3d 573, 577 (8th Cir. 2007) (concluding the district court properly found an affidavit that contradicted earlier deposition testimony did not create a genuine issue of material fact); **RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.**, 49 F.3d 399, 402 (8th Cir. 1995) ("[P]arties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment."). A court should not, however, disregard a post-deposition affidavit that "simply restates information already contained in deposition

testimony or elaborates on information already conveyed," **Popoalii v. Correctional Med. Servs.**, 512 F.3d 488, 498 (8th Cir. 2008), that does not actually contradict the affiant's earlier testimony, that includes statements "that [the affiant] was confused in [the earlier] deposition or where the affiant needs to explain portions of [the earlier] deposition testimony that were unclear," **City of St. Joseph, Mo. v. Southwestern Bell Tel.**, 439 F.3d 468, 476 (8th Cir. 2006).

In this case, Plaintiffs have submitted declarations that contradict their earlier deposition testimony on crucial issues. It appears to the Court that the contradictory statements in the declarations are given for the purpose of creating a sham issue of fact. As a result, the Court will not consider any part of Plaintiffs' declarations that contradict their earlier deposition testimony.

Plaintiffs' Excessive Force Claims. Plaintiffs seek to hold defendants Rowe and Rosenboom responsible for the alleged excessive force used by MSOTC security aides and the police officers. Rowe and Rosenboom respond that the evidence shows that they were not directly involved in either of the physical altercations; therefore, they "can only be liable to Plaintiffs if their failure to train or supervisor the security aides or the law enforcement officials cause the alleged deprivation of constitutional rights." They further argue that Plaintiffs cannot make this showing because neither Rowe nor Rosenboom were responsible for the supervision or training of either the MSOTC security staff or the police officers. Plaintiffs counter that the two Defendants "triggered" the use of force by requesting that the

security aides subdue Plaintiffs for the purpose of medicating Spencer. Because Rowe and Rosenboom could request that the security aides subdue Plaintiffs, it follows that they had the ability to prevent or stop the use of excessive force. Plaintiffs also claim that MSOTC security aides had used excessive force in the past to subdue detainees. Plaintiffs state that Defendants had knowledge of the use of excessive force; consequently, they should have known that the security aides would use excessive force when they requested that the security aides subdue Plaintiffs.

Although the doctrine of vicarious liability does not apply in cases brought pursuant to § 1983, see **Brockinton v. City of Sherwood, Ark.**, 503 F.3d 667, 674 (8th Cir. 2007); **Lenz v. Wade**, 490 F.3d 991, 995 (8th Cir. 2007), "'[a] supervisor may be held individually liable under § 1983 if [s]he directly participates in the constitutional violation or if [s]he fails to train or supervise the subordinate who caused the violation,'" **Riehm v. Engelking**, 538 F.3d 952, 962-63 (8th Cir. 2008) (quoting Brockinton, 503 F.3d at 673) (alterations in original). "The standard of liability for failure to train is deliberate indifference" and "for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts." **Brockinton**, 503 F.3d at 673. A single incident, or series of isolated incidents, of unconstitutional activity is not sufficient to establish liability under § 1983. See **Williams v. Little Rock Mun. Water Works**, 21 F.3d 218, 223 (8th Cir. 1994); **Sanders v. Brewer**, 972 F.2d 920, 923 (8th Cir. 1992); **Howard v. Adkison**, 887 F.2d 134, 138 (8th Cir. 1989).

In this case, there is no evidence that either Rosenboom or Rowe had any supervisory authority over either the MSOTC security aides or the responding police officers. Additionally, there has been no showing that either Rosenboom or Rowe had notice that the training procedures for either the security aides or the police officers were inadequate. As a result, Plaintiffs cannot hold either Rosenboom or Rowe responsible under the theory of vicarious liability.

Additionally, Plaintiffs argument that Rowe's request that the security aides subdue them for the purpose of medicating Spencer gives rise to supervisory liability under § 1983 is specious. The fact that Rowe, a nurse, requested help from security staff in carrying out her orders does not make her a de facto supervisor of the security aides. There is nothing in the record to indicate that she had any duty to train, supervise, or control the security aides' actions. See **Tilson v. Forrest City Police Dept.**, 28 F.3d 802, 812 (8th Cir. 1994).

Similarly, Plaintiffs' contention that MSOTC security staff had used excessive force in the past, and therefore, Rowe and Rosenboom should have known that to request help from the security aides would lead to the application of excessive force, is without any basis. There is no admissible evidence in the record that MSOTC staff ever used excessive force in subduing detainees. Plaintiffs' allegations that such excessive force had occurred are wholly conclusory and without evidentiary support.

<u>Plaintiffs' Access to the Courts Claims.</u> Plaintiffs vaguely allege in their complaint that they were denied their constitutional right of access to the courts. Rowe and Rosenboom argue that they are entitled to summary judgment on any such claims because they were not

directly involved in any of Plaintiffs' attempts to access the justice system. Plaintiffs do not dispute this alleged lack of involvement.

To prove a violation of the right of meaningful access to the courts, a plaintiff must establish an actual injury. See **Hartsfield v. Nichols**, 511 F.3d 826, 831 (8th Cir. 2008); **White v. Kautzky**, 494 F.3d 677, 680 (8th Cir. 2007). An actual injury is "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." **Id.**

Plaintiffs' complaint neither alleges such injury or alleges any facts showing that Rowe and Rosenboom impeded their access to the courts. Consequently, Rowe and Rosenboom are entitled to summary judgment on Plaintiffs' access to the courts claims.

Qualified Immunity. Rowe and Rosenboom argue that they are also entitled to summary judgment on the grounds of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pearson v. Callahan**, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" **Id.** (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

For a right to be "clearly established," [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." **Anderson v. Creighton**, 483 U.S. 635, 640 (1987) (citation omitted); see also **Hudson v. Hall**, 231 F.3d 1289, 1297 (11th Cir. 2000) ("Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.") (internal quotations omitted).

In this case, the evidence shows that Rowe and Rosenboom did not violate a clearly established constitutional right of which a reasonable person should have known. Spencer has been civilly committed to the care of MSOTC because he has been found to have a mental abnormality that causes him to be predisposed to committing acts of sexual violence. When Rowe approached Spencer to administer an injection of Risperdal, for which there was a doctor's order, Plaintiffs let it be known that they would physically resist the order. When security aide Pritchett approached Spencer, Spencer punched him. Plaintiffs were subsequently subdued with non-lethal force. Civil detainees at MSOTC do not have a clearly established right to be free from the use of non-lethal force when they engage in group protest, especially where the group protest involves physical resistance instigated by the detainees. As a result, Rowe and Rosenboom are entitled to qualified immunity.

## Conclusion

Defendants Johnathon Rosenboom and Mary Beth Rowe have established that they are, for the reasons set forth above, entitled to summary judgment on Plaintiffs' claims of excessive force and denial of access to the courts.[8] Accordingly,

**IT IS HEREBY ORDERED** that the motion of Johnathon Rosenboom and Mary Beth Rowe for summary judgment is **GRANTED**. [Doc. 116]

A separate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of April, 2009.

---

[8]The Court thanks appointed counsel for his excellent service in this case. He is now relieved of the appointment.